# In the United States Court of Federal Claims

No. 08-902C

(Filed: July 21, 2009)

| | |
|---|---|
| ************************************* * <br> *<br>OK'S CASCADE COMPANY, *<br> * Contract Disputes Act, 41 U.S.C. §<br>Plaintiff, * 605(c)(1) (2006); Contractor's Failure to<br> * Certify Claims Exceeding $100,000; Effect<br>v. * of Contracting Officer's Decisions on<br> * Uncertified Claims; Contractor's Inability<br>THE UNITED STATES, * to Rely Upon Decisions Beyond the Scope<br> * of Contracting Officer's Authority.<br>Defendant. *<br> *<br>************************************* * | |

*John Lukjanowicz*, Law Offices of John Lukjanowicz, PC, Seattle, Washington, for Plaintiff.

*Jessica R. Toplin*, with whom were *Michael F. Hertz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Mark Melnick*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

 This case involves a requirements contract between Plaintiff OK's Cascade Company ("OK's") and the United States Department of Agriculture, Forest Service, National Interagency Fire Center ("NIFC") to provide meals to Government firefighting crews. On July 5, 2003, the NIFC issued a Food Service Request assigning one of OK's mobile food service units to the Encebado Fire in Taos, New Mexico. When the NIFC dispatch center learned that OK's could not meet the date and time requirements for serving the first meal at the Encebado Fire, it reassigned the order to another contractor. OK's submitted an uncertified claim to the Contracting Officer on August 4, 2004 alleging that the NIFC wrongly assigned the Encebado Fire order to the other contractor. OK's claimed damages of $154,854.00.

The Contracting Officer initially awarded OK's damages of $149,831.40, plus interest, but then decreased the award to $92,883.90 to account for offsetting work that OK's performed at two other fires during the same period. Upon OK's submission of an invoice for payment of $92,883.90, the NIFC refused to pay the full amount because the contract provisions for cancelled orders only permitted recovery for the cost of the first meal ordered, plus mileage. On April 8, 2005, OK's filed suit in this Court for breach of contract, but the Court dismissed OK's suit without prejudice for lack of subject matter jurisdiction, due to OK's failure to certify its claim. OK's Cascade Co. v. United States, No. 05-458C (Order, Nov. 1, 2005) (Williams, J.). Following this dismissal and OK's submittal of a certified claim on November 1, 2007, a successor Contracting Officer issued a final decision on December 17, 2007 awarding OK's $6,025.00 for 500 breakfast meals, the first meal that OK's could have served. The NIFC paid OK's this amount.

OK's commenced the present action on December 17, 2008, alleging that the NIFC breached its contract and abused its discretion in failing to enforce the monetary award of the original Contracting Officer. This matter is before the Court on Defendant's February 17, 2009 motion to dismiss, or, in the alternative, for summary judgment. Defendant argues that OK's has failed to state a claim upon which relief can be granted because the original Contracting Officer's decision is reviewed *de novo* by this Court, and is not binding upon Defendant. Even if OK's has pleaded a valid claim, Defendant asserts that it is entitled to judgment as a matter of law because the original Contracting Officer's decision in response to an uncertified claim was not a final decision enforceable in this Court. Defendant also states that OK's has received all of the relief to which it is entitled pursuant to the cancellation provisions of the contract.

For the reasons stated below, the Court concludes that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law. Accordingly, the Court hereby GRANTS Defendant's motion for summary judgment. The Court does not need to address Defendant's alternative motion to dismiss for failure to state a claim upon which relief can be granted.

## Background[1]

On May 5, 1999, the NIFC entered into a requirements-type contract, Contract No. 53-024B-9-2056, with OK's for the provision of meals to Government firefighting crews.

---

[1] The facts recited herein are taken from the parties' briefs and accompanying proposed findings of uncontroverted facts on Defendant's February 17, 2009 motion to dismiss, or, in the alternative, for summary judgment. The Court is satisfied that the material facts necessary to decide the issues presented are not in dispute.

Def.'s Proposed Findings of Uncontroverted Fact ("DPFUF") ¶ 1. The contract stated that: "Due to the sporadic occurrence of incident activity, the Government DOES NOT GUARANTEE placement of any orders for service . . . ." Id. ¶ 2 (emphasis in original). If the NIFC ordered meals, the contract obligated it to do so through its National Interagency Coordination Center ("the NICC" or "the dispatch center") according to the following procedure:

> The Government has contracts with several firms for Mobile Food Services and will utilize the Contractor located at the Designated Dispatch Point closest to the Incident as determined by using the Rand McNally Road Atlas© or the latest version of Microsoft Expedia Streets & Trips©, providing that the equipment meets the Incident's needs and that required time frames can be met.

Id. ¶ 3. The contract addressed order cancellations as follows: "A Mobile Food Service Unit may be canceled at any time prior to any meals being served or released at any time after serving has begun . . . . Notice of cancellation [of a Mobile Food Service Unit] will be provided to the Contractor by the NICC located at NIFC or AICC." Id. ¶ 4. It stated further that: "[i]n the event an order is cancelled or reassigned en-route before any meals are served, the Contractor will be paid for the number of meals ordered for the first meal plus mileage, if applicable." Id.

On the morning of July 5, 2003, the NIFC required a mobile food service unit to report to the Encebado Fire in Taos, New Mexico. Id. ¶ 5. At that time, OK's Mobile Kitchen Unit Number K-13 ("the K-13 unit") was returning from servicing another fire in Albuquerque, New Mexico, approximately 135 miles from Taos, New Mexico, to its Designated Dispatch Point ("DDP") in Fresno, California. Id. ¶ 6. OK's had notified the NIFC's dispatch center the previous day that the unit was available for reassignment to another fire. Id.; Pl.'s Proposed Findings of Uncontroverted Facts ("PPFUF") ¶ 7A. A dispatcher contacted OK's and asked if the K-13 unit could serve lunch at the Encebado Fire that afternoon, but Jason Stuvland, OK's Director of Logistics and Dispatch, orally informed the dispatcher that OK's would not have enough time to mobilize its equipment and set up for the 12:00 Noon lunch order. Id. ¶ 7F; DPFUF ¶ 9. OK's told the dispatcher that the earliest order it could fill was dinner at 7:00 P.M. on July 5, 2003, and the dispatcher gave OK's the approval to fill this order. DPFUF ¶ 10. However, OK's internal Logistics Memorandum indicates that OK's would not have completed initial set-up for dinner until between 7:30 P.M. and 9:00 P.M. Id. ¶ 11; Appendix ("App.") 159. At 8:54 A.M. on July 5, 2003, the dispatch center faxed a Food Service Request to OK's, assigning OK's K-13 unit to the Encebado Fire and ordering 300 sack lunches to be provided by 12:00 Noon that day, despite the oral understanding between Mr. Stuvland and the dispatcher that OK's could not

fill this order. DPFUF ¶¶ 7-8.

Later that morning, dispatcher Richard Bates informed Mr. Stuvland that the dispatcher to whom Mr. Stuvland had spoken earlier had erred in assigning OK's K-13 unit to the Encebado Fire because OK's could not meet the date and time requirements for serving the first meal under the Food Service Request. PPFUF ¶ 7F. Mr. Bates then cancelled the order with OK's and placed an order with Houston's Trails End Catering ("Houston's") because the contractor was located at the DDP "closest to the Incident," as called for under the contract. DPFUF ¶¶ 12-13; App. 41. Houston's catered the Encebado Fire from July 6, 2003 through July 18, 2003. DPFUF ¶ 14. During that time, the NIFC assigned OK's K-13 unit to two other fires: the Woodlot Fire (July 9, 2003 through July 13, 2003) and the Robb Fire (July 15, 2003 through July 17, 2003). Id. ¶ 15.

On August 4, 2004, OK's submitted an uncertified letter to the NIFC demanding $154,854.00 in payment, alleging that the Encebado Fire order was "given in error" to Houston's, rather than to OK's. Id. ¶ 16. On August 5, 2004, in a letter that purported to be a Contracting Officer's final decision, NIFC Contracting Officer John Venaglia responded to OK's August 4, 2004 correspondence and informed OK's that it was entitled to $149,831.40, plus interest. Id. ¶ 17. Mr. Venaglia's letter stated: "The government correctly gave the order to OK's as they were the closest available vendor. However, the order was then cancelled and given to Houston's Catering against my order." Id. ¶ 18. OK's signed the letter and returned it to Mr. Venaglia by facsimile that same day. Id. ¶ 19.

During this time, Mr. Venaglia and OK's president, James Vuksic, had been negotiating a settlement agreement relating to another claim that OK's had submitted to the NIFC. Id. ¶ 20. The NIFC and OK's executed a settlement agreement on August 6, 2004 in which the NIFC would pay OK's a settlement sum in return for OK's release of the NIFC from claims arising under "the Contract." Id. ¶ 21. The "Contract" described in the settlement agreement refers to Contract No. 53-024B-9-2056, the same contract for mobile food service that is the subject of this litigation. Id. ¶ 22. The settlement agreement stated that it pertained "to damages allegedly suffered by OK's for alleged wrongful suspension of kitchen sites and for other alleged improper Contracting Officer actions under the Contract . . . ." Id. ¶ 23; App. 187.

OK's submitted a second letter to the NIFC on August 25, 2004, after the NIFC learned that OK's had been dispatched to two other fires during the same period in which OK's alleged that it should have been assigned to the Encebado Fire. DPFUF ¶ 25. In its second letter, OK's agreed that the award should be decreased but argued that it was entitled to $123,722.40. Id. ¶ 26. OK's did not certify the claim in its second letter. Id. Mr. Venaglia issued a second letter to OK's on August 27, 2004 awarding OK's $92,883.90, a

total he reached after subtracting the revenue OK's earned between July 6, 2003 and July 18, 2003 for work performed at the two other fires. Id. ¶¶ 27-28. The August 27, 2004 letter purported to be a final decision but invited OK's to "advise within 15 days of receipt of this notice" if there was any disagreement. Id. ¶ 29.

On August 31, 2004, Mr. Venaglia sent a follow-up letter to OK's vice president, Wade McIntyre, stating that after further consideration, he had decided to leave the total due to OK's for the Encebado Fire at $92,883.90. Id. ¶ 30. Mr. Venaglia then attempted to modify the August 6, 2004 settlement agreement for the purpose of excluding OK's Encebado fire claim from the settlement. Id. ¶ 31. To do so, he drafted another settlement agreement entitled "Addendum No. 1" that mirrored the first but added the following sentence in bold print: "**However, the claim for the Encebado Fire (2003) shall be settled separately.**" Id.; App. 194. Mr. Venaglia and OK's president signed the modified settlement agreement on September 14, 2004. DPFUF ¶ 32; App. 195.

On September 16, 2004, OK's submitted to the NIFC an invoice for $92,883.90, along with a copy of Mr. Venaglia's August 31, 2004 letter and the modified settlement agreement. DPFUF ¶ 34. In a letter dated December 14, 2004, the NIFC refused to pay the damages amount because it determined that there was no contractual basis for liability. Id. ¶ 35. Instead, the NIFC concluded that OK's was entitled only to payment in accordance with the contract's provision for cancelled orders, which provides that "[i]n the event an order is cancelled or reassigned en-route before any meals are served, the Contractor will be paid for the number of meals ordered for the first meal plus mileage, if applicable." Id. ¶ 36. The NIFC determined that the first meal of the cancelled order was for 300 lunches at $13.40 each, for a total of $4,020.00. Id. ¶ 38. In addition to notifying OK's of the revised award, the letter also stated, "[l]acking the required certification, as in the instant case, there never was a valid claim [by OK's] that would warrant a final decision by a Contracting Officer." Id. ¶ 39. Contracting Officer Richard M. Willis, Chief of the Fire and Aviation Support Branch of the NIFC, signed this letter. Id. ¶ 37. The former Contracting Officer, Mr. Venaglia, had resigned from the NIFC in September 2004. Id.

In a December 31, 2004 letter, OK's president responded to the NIFC that OK's had "reached a 'deal' with Mr. Venaglia." App. 203. OK's contended that the NIFC was obligated to honor this "deal," and that "[n]othing . . . prohibited Mr. Venaglia from considering our uncertified submission." Id.; DPFUF ¶ 40. OK's further argued that certification of its claim was unnecessary because the settlement amount ultimately agreed to by Mr. Venaglia fell below the $100,000 threshold set forth in the Contract Disputes Act, 41 U.S.C. § 605(c)(1) (2006) ("CDA"). Id. ¶ 41.

On April 8, 2005, OK's filed its first complaint in this Court, and the case was

assigned to Judge Mary Ellen Coster Williams. Id. ¶ 42. Judge Williams dismissed the complaint without prejudice for lack of subject matter jurisdiction so that OK's could submit a certified claim to the Contracting Officer for a final decision. OK's Cascade Co. v. United States, No. 05-458C (Order, Nov. 1, 2005) (Williams, J.). On November 1, 2007, OK's submitted a certified claim to the Contracting Officer, requesting payment in the amount of $92,883.90 based on the arrangement it had negotiated with Mr. Venaglia. Id. ¶¶ 44-45. On December 17, 2007, Contracting Officer Melinda Draper issued a final decision awarding OK's $6,025.00 pursuant to the contract's order cancellation provisions and denying the balance of the claim. Id. ¶ 46. In her decision, Ms. Draper noted that OK's failed to articulate a contractual basis for its claim that it was entitled to $92,883.90. Id. ¶ 47. Ms. Draper provided the following rationale for denying the balance of OK's claim:

> The remainder of the claim is denied for three reasons: (1) you waived the claim under an August 6, 2004 settlement agreement with the Agency, (2) the alleged modification of the August 6, 2004 settlement agreement, purporting to reinstate the claim, is unenforceable, and (3) OK's Cascade is not entitled to payment under the terms of the contract.

Id. ¶ 48; App. 201. In concluding that OK's was entitled only to payment of $6,025.00, Ms. Draper stated:

> When the Agency cancelled the Encebado Fire order, it did not breach the contract, which expressly permits the Agency to cancel an order for a mobile food service unit "at any time prior to any meals being served." Contract, § C.2.2. Moreover, the contract specifies how much contractors are to be paid following an order cancellation: "the number of meals ordered for the first meal plus mileage, if applicable." Contract § G.2.2.1. There is no dispute the Agency cancelled the order with your company prior to any meal service on the Encebado Fire, and you do not appear to argue that you are entitled to mileage. (The cancellation occurred before you could mobilize to the Encebado Fire.) **Therefore, under the contract, you are entitled to payment of $6,025.00 (500 breakfast meals times $12.05 each).**

DPFUF ¶ 49; App. 226 (emphasis in original). Ms. Draper calculated the damages based on the assumption that the first meal OK's could have served was breakfast on July 6, 2004. DPFUF ¶ 50.

On December 17, 2008, OK's filed the present complaint in this Court asserting three causes of action: (1) that the Government breached its contract with OK's by failing to honor Mr. Venaglia's letters; (2) that the Government abused its discretion "by attempting to override a decision that had been duly negotiated and agreed upon by Mr. Venaglia and OK's [i]n accordance with the policy contained in Federal Acquisition Regulation § 33.204;" and (3) that Mr. Venaglia's letters were proper final decisions that could not be reversed. Id. ¶¶ 54-56. OK's seeks $86,858.90 in damages, the amount of its claim denied by Ms. Draper in her December 17, 2007 final decision. Id. ¶ 52.

On February 17, 2009, Defendant filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Court of Federal Claims ("RCFC"), or alternatively, a motion for summary judgment under RCFC 56. OK's submitted a response on May 12, 2009, and the Government replied on May 28, 2009. The Court heard oral argument on Defendant's motion by telephone on July 1, 2009.

Discussion

A. Standard of Review

Defendant has filed a "motion to dismiss, or alternative motion for summary judgment," citing RCFC 12(b)(6) and RCFC 56. In the present case, the Court concludes that Defendant is entitled to summary judgment under RCFC 56, and therefore does not address Defendant's RCFC 12(b)(6) motion for failure to state a claim upon which relief can be granted.

Summary judgment is appropriate under RCFC 56 when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (citation omitted); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001), rehearing en banc denied, (2001) (citation omitted). Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001), cert. denied, (2002) (citation omitted). In reviewing a motion for summary judgment, the benefit of all presumptions and factual inferences runs in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citation omitted); Lathan Co., Inc. v. United States, 20 Cl. Ct. 122, 125 (1990) (citation omitted). The moving party bears the initial burden of showing an absence of evidence to support the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-movant must come forward with specific facts that give rise to genuine issues of material facts. RCFC 56(e); Matsushita, 475 U.S. at 587 (citation omitted).

Disputes over facts that might affect the outcome of the case are considered "material." See Liberty Lobby, 477 U.S. at 248. If the non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. See id.

> B. Defendant Is Entitled to Summary Judgment Because Mr. Venaglia's Actions Do Not Bind the NIFC or This Court.

OK's asserts that the NIFC breached its contract by failing to honor former Contracting Officer John Venaglia's written decisions awarding OK's payment, and that Mr. Venaglia's determinations constituted final decisions that cannot be reversed by a successor Contracting Officer. In its motion for summary judgment, Defendant argues that it is entitled to judgment as a matter of law because Mr. Venaglia's actions do not bind the NIFC or this Court. The Court agrees with Defendant.

The CDA states that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Under the CDA, this Court's jurisdiction is predicated upon a contractor meeting two fundamental requirements: (1) the submission of a written claim to the Contracting Officer and (2) the agency's issuance of a final decision. Deponte Inv., Inc. v. United States, 54 Fed. Cl. 112, 115 (2002) (citations omitted); Witherington Constr. Corp. v. United States, 45 Fed. Cl. 208, 211 (1999). The Federal Acquisition Regulation ("FAR") defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101 (2009). The Federal Circuit has interpreted the definition of a claim as requiring: (1) a demand or assertion in writing; (2) money sought as a matter of right; and (3) writing that sets forth a sum certain. H.L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1565 (Fed. Cir. 1995) (citation omitted).

The CDA further requires any contractor claiming more than $100,000 to:

> certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1). Therefore, a contractor seeking more than $100,000 must submit a

certified claim to the Contracting Officer before bringing a cause of action pursuant to the CDA in this Court. W.M. Schlosser Co., Inc. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983) (citation omitted); Info. Int'l Assocs. v. United States, 74 Fed. Cl. 192, 201-02 (2006) (citations omitted). Proper certification mandates that "a contractor . . . make a statement which simultaneously makes all of the assertions required by 41 U.S.C. § 605(c)(1)." D.L. Braughler Co., Inc. v. West, 127 F.3d 1476, 1480 (Fed. Cir. 1997) (quoting WH. Moseley Co. v. United States, 677 F.2d 850, 852 (Ct. Cl. 1982)). If a contractor fails to submit a certified claim to a Contracting Officer, the Contracting Officer's decision cannot be considered a "final decision," as required under the CDA. Id. (citation omitted). As a result, a Contracting Officer who renders a decision on an uncertified claim exceeds the scope of his authority and cannot bind the Government by his actions. See id. at 1480-81 (holding that subsequent proceedings to the submission of an uncertified claim have no legal significance) (citation omitted); United Partition Sys., Inc. v. United States, 59 Fed. Cl. 627, 637 (2004) ("When a contracting officer goes beyond the scope of his authority and issues a final decision that is jurisdictionally invalid, such a decision is treated as a legal nullity . . . .") (citation omitted); Witherington Constr. Corp., 45 Fed. Cl. at 211 ("[A] contracting officer's decision that is invalid may not serve as a basis for a CDA action.") (citations omitted).

In the present case, OK's attempted to submit two claims to Mr. Venaglia, but neither complied with the CDA's certification requirement. On August 4, 2004, OK's sent a letter to the NIFC alleging that the NIFC's decision to award the Encebado Fire order to Houston's was "given in error" and demanding $154,854.00. DPFUF ¶ 16. Mr. Venaglia responded with a letter on August 5, 2004 stating that OK's was entitled to $149,831.40 plus interest, and OK's signed and returned the letter by facsimile that day. Id. ¶¶ 17, 19. On August 25, 2004, OK's submitted a second letter to the NIFC asserting that the award should be decreased to $123,722.40 based on OK's response to two other fires during the same period in which it alleged it should have been dispatched to the Encebado Fire. Id. ¶¶ 25-26. Mr. Venaglia issued a second letter on August 27, 2004, purporting to be a final decision and awarding $92,883.90 based on the revenue OK's earned between July 6, 2003 and July 18, 2003 for work performed at the other two fires. Id. ¶¶ 27-29. Neither OK's August 4, 2004 letter nor its August 25, 2004 letter was certified, despite the fact that each demanded more than $100,000. See, e.g., W.M. Schlosser Co., Inc., 705 F.2d at 1338-39 (citation omitted). Therefore, Mr. Venaglia's response letters do not constitute final decisions binding on the NIFC, and they cannot be reviewed by this Court. See, e.g., D.L. Braughler Co., 127 F.3d at 1480-81 (citation omitted).

OK's argues that it has challenged Ms. Draper's December 17, 2007 final decision to award the company $6,025.00, and not Mr. Venaglia's August 2004 written determinations. This argument amounts to mere semantics. OK's seeks review of Ms. Draper's final decision

because it contends that Mr. Venaglia's written determinations constitute binding agreements on the NIFC. The Court already has concluded that Mr. Venaglia's actions are not enforceable against the NIFC, and, therefore, are entitled to no weight.

Alternatively, OK's asserts that the NIFC's failure to honor Mr. Venaglia's letters violates the policy set forth in FAR 33.204, constituting an abuse of discretion. This argument lacks merit. FAR 33.204 states in relevant part that: "[th]e Government's policy is to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level. Reasonable efforts should be made to resolve controversies prior to the submission of a claim." FAR 33.204. In the circumstances presented, nothing in this FAR provision compels the Government to do anything. Moreover, FAR 33.204 does not apply in this case because the provision only addresses controversies arising prior to the submission of a claim. OK's made two separate written demands to Mr. Venaglia for a specific sum of money sought as a matter of right and based on the NIFC's allegedly improper decision to award the Encebado Fire order to Houston's. See H.L. Smith, Inc., 49 F.3d at 1565. These written demands represent claims, not mere "negotiation efforts to resolve contractual issues in controversy . . . ," as OK's suggests. See Pl.'s Br. at 12. Therefore, OK's cannot invoke FAR 33.204 as a means of enforcing Mr. Venaglia's decisions.

Finally, the Court notes that OK's does not challenge Ms. Draper's interpretation of the contract damages provision or her assertion that $6,025.00 is the proper damages calculation. See Compl. ¶¶ 26-31 (Dec. 17, 2008); App. 221-26. The sole basis for OK's complaint is that the NIFC is bound by Mr. Venaglia's damages determinations. Therefore, no issue exists as to Ms. Draper's damages calculation.

## Conclusion

Based upon the foregoing, there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge